UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDELKA BASS,

                        Plaintiff,

            – against –                          **OPINION & ORDER**
                                                 13 Civ. 8516 (ER)
DAVID HOUT and ADMIRAL MERC
MFR FREIGHT,

                        Defendants.

Ramos, D.J.:

      Judelka Bass was involved in a motor vehicle accident with David Hout, an

employee of Admiral Merchants Motor Freight, Inc. ("Admiral"), in November 2012.

Bass alleges that she injured her left shoulder, and so, in August 2013, she sued Hout and

Admiral for those injuries.  After discovery, the defendants moved for summary

judgment, claiming that the record shows that Bass did not suffer a "serious injury"

allowing a cause of action to lie as prescribed by New York Insurance Law § 5104(a).[1]

Because the Court finds there are genuine issues of material fact regarding the existence

of three kinds of "serious injury" as defined in New York Insurance Law § 5102(d), the

motion is DENIED.

I.      **FACTUAL BACKGROUND**

      Bass was driving on the Cross Bronx Expressway in November 2012 when, she

alleges, a truck driven by Hout crossed into her lane and struck her.  Notice of Removal

---

[1] The defendants have not submitted a reply to Bass' opposition.

Ex. 1 ¶ 22, Doc. 1.[2]  She alleges that during the accident, she was tossed around inside of her vehicle and injured.  *Id.*

Bass has experienced two previous car accidents.  The first, sometime between 1997 and 2001, caused injuries to her neck and back, which still bothered her at the time of the 2012 accident.  Certification in Support ("Billig Decl.") Ex. 5 at 21–36, Doc. 51.  The second, in 2009, caused her to suffer bulges in her back, herniated discs in her back, or both.  Defs.' Statement of Material Facts ("Defs.' SMF") ¶ 9, Doc. 52.  The 2009 accident had kept her out of work for a year afterwards.  *Id.* ¶ 12.

After the 2012 accident, Bass was taken by ambulance to Albert Einstein Hospital in the Bronx.  Pl.'s Statement of Material Fats ("Pl.'s SMF"), ¶ 2, Doc. 44.[3]  She was seven-months' pregnant at the time and so had physicians check the child's health; no issues were detected.  *Id.* ¶ 3.  She did not complain of pain to her neck, back, or shoulders while at the hospital.  Defs.' SMF ¶ 4.  She was discharged that day.  Pl.'s SMF ¶ 3.

About a week later, Bass went to Dr. Jeffrey Cohen, an orthopedist, complaining of pain in her left shoulder and numbness in her left hand that began after her accident.  Pl.'s SMF ¶ 4.  Cohen examined Bass and found that she could move her left arm only 75 degrees in a forward flexion test and 65 degrees in an abduction test — a 58% and 64% loss in function, respectively.  *Id.* ¶ 6.  A patient should normally be able to move the arm 180 degrees in either test.  *Id.*  Cohen used a goniometer to objectively measure Bass'

---

[2] Bass is a resident of New York, Hout is a resident of Ohio, and Admiral is a resident of Minnesota.  Notice of Removal ¶ 6.  Bass has alleged more than $75,000 in damages, thereby giving this Court jurisdiction pursuant to 28 U.S.C. § 1332.

[3] Although the defendants, movants, submitted a statement of material facts, they did not submit a counter-statement to Bass' own statement of material facts.  Therefore, the Court finds Bass' statement of facts to be admitted for the purposes of this motion if not contradicted by the defendants' own statement.  Local Rule 56.1(c).

flexibility.  *Id.*  Cohen prescribed heat, ice, and therapeutic exercises, and he wrote her a disability note excusing Bass from work.[4]  *Id.* ¶ 7.

Two weeks after her visit with Cohen, Bass visited Dr. James McGee, a chiropractor, in late November 2012.  Pl.'s SMF ¶ 8.  At that visit, she complained of increasing neck, head, and back pain, as well as muscle spasms and radiating pain in her left arm.  *Id.*  McGee conducted tests on Bass's spine and shoulder using a goniometer and found a reduction in flexibility, as well.  *Id.* ¶¶ 9–11.  McGee's examination also indicated weakness in Bass' shoulder abductors and impingement of the left shoulder.  *Id.* ¶ 12.  Bass continued treatment with the chiropractor for the next year.  *Id.* ¶ 13.

Bass returned to Cohen, the orthopedist, on November 28 and December 19, 2012.  He again measured the range of motion in her left shoulder and again found loss of function in both the forward flexion and abduction tests.  Pl.'s SMF ¶¶ 14, 16.  After both of these visits, Cohen advised Bass, who was still pregnant at the time, to undergo an MRI after she delivered her child.  *Id.* ¶¶ 15, 17.  After the December visit, Cohen prescribed physical therapy and, if the MRI were positive, arthroscopic surgery to her left shoulder.  Declaration in Opposition ("Fier Decl.") Ex. C at 33, Doc. 42.

After the birth of Bass' son, she returned to Cohen on February 6, 2013.  Pl.'s SMF ¶ 18.  Cohen found that her range of motion had improved but was still suffering a loss of function of 44% on both the forward flexion and abduction tests.  *Id.*  Cohen cleared her for physical therapy and an MRI.  *Id.* ¶ 19.

The MRI was taken on February 19, 2013.  *Id.* ¶ 20.  The parties dispute the results of the MRI.  The defendants, citing to the report of radiologist Dr. John T. Rigne, claim that the MRI showed "no fractures or tears of [Bass'] shoulder."  Defs.' SMF ¶ 8. Bass' radiologist, Dr. Thomas M. Kolb, indicated that there was evidence of a partial

---

[4] Cohen provided Statements of Disability on December 19, 2012, March 20, 2013, and April 10, 2013, which indicated that she could not return to work due to the November 2012 accident.  Declaration in Opposition ("Fier Decl.") Ex. C at 67–75, Doc. 42.  Bass has not returned to work since the accident.  Pl.'s SMF ¶ 66.

rotator cuff tear and a tear of the anterior labrum. Pl.'s SMF ¶ 20. Both radiologists

agree that the MRI was of poor quality. *See* Fier Decl. Ex. D; Certification in Support

("Billig Decl.") Ex. 5, Doc. 51.

Cohen examined Bass again on February 20 and March 6, 2013. Bass' shoulder

flexibility showed 56% loss on both the forward flexion and abduction tests — worse

than the results of the February 6 tests. Pl.'s SMF ¶ 21, 23. Based on the MRI results,

Cohen recommended physical therapy and a cortisone injection. *Id.* ¶ 24. If that

treatment did not work, he advised her to undergo surgery. *Id.*

Bass continued to visit with Cohen through March, April, May, and June. Pl.'s

SMF ¶¶ 25–32. During these visits, Cohen found some improvement to her range of

motion, although Bass's left shoulder never improved beyond 44% loss of function in the

forward flexion test and 50% in the abduction test. Cohen also advised Bass to take

cortisone shots in her shoulder and to undergo arthroscopic surgery, but Bass refused

because she was breast-feeding her infant son at the time.

Bass eventually underwent arthroscopic surgery on July 29, 2013. *Id.* ¶ 33.

Again, the parties dispute the results. Citing to their radiologist and orthopedist, Dr.

Gregory Montalbano, the defendants claim that no tear was found and that the

arthroscopic surgeon performed no repairs. Defs.' SMF ¶ 5. Bass, citing to the surgeon's

postoperative report, claims that the surgery revealed a torn labrum in her left shoulder, in

addition to impingement and synovitis. Pl.'s SMF ¶ 33. The surgeon's report also

indicates the surgeon completed an acromioplasty during the procedure, a procedure

meant to relieve pressure in the area around the rotator cuff. Fier Decl. Ex. D at 80; *see*

*also Acromioplasty*, Stedman's Medical Dictionary (2014).

Bass continued to see Cohen over the next two-and-a-half years, with the last

reported visit taking place on February 1, 2017. Pl.'s SMF ¶ 34–64. During these visits,

Cohen prescribed pain killers, physical therapy, and cortisone injections, which Bass

took. Bass' flexibility fluctuated during her treatment, with Cohen measuring her to be

most flexible in May 2014 with a loss of 19% in her forward flexion test and 22% in her abduction test. Her last test, in February 2017, showed a 50% loss of flexibility in her forward flexion test and a 66% loss in her abduction test.

Both Cohen and the defendants' orthopedist, Montalbano, submitted sworn expert reports regarding the impact of the November 2012 accident and its relation to her shoulder pain. Montalbano examined Bass himself, finding limited range of motion in her left shoulder — although he notes that "current clinical findings are subjective and are under the control of the examinee." Billig Decl. Ex. 6 at 6. Based on this examination and his review of the medical record, he opined that it is unlikely that Bass sustained a permanent — or even traumatic — injury to her left shoulder as a result of her accident. *Id.* at 5. In support, he notes that Bass did not report shoulder pain at the time of the accident and that no emergency responders noticed objective clinical signs of a shoulder injury. *Id.* He indicates that Bass' shoulder disfunction may be related to her underlying diabetes or obesity. *Id* at 6.

Cohen, on the other hand, opined that the shoulder disfunction is due to the November 2012 motor vehicle accident. Pl.'s SMF ¶ 66. Furthermore, he believes that her shoulder injury will continue to "significantly limit the use of her left shoulder" and interfere with her daily activities, including taking care of herself and her son. *Id.* ¶ 67. He indicates that the shoulder "continues to give out on her" and may again require surgical intervention. *Id.* He further indicates that the injury is preventing Bass from returning to her job from before the accident. *Id.* He does not believe that the shoulder injury is due to any prior motor vehicle accident. *Id.* ¶ 66.

## II.     RELEVANT LAW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467

(S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id*. (internal quotation marks omitted).  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (citing *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)). But "[w]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."  *Jaramillo*, 536 F.3d at 145.

The New York Insurance Law only allows for damages to be recovered from a car accident if there is a "serious" injury.  *See* N.Y. Ins. Law § 5104(a).  A serious injury is defined as one resulting in "death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system;" or, most relevant to this motion:

- permanent consequential limitation of use of a body organ or member;
- significant limitation of use of a body function or system;
- or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one-hundred-and-eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d) (bullet points added).  The last category is commonly referred to as the "90/180 standard."

On summary judgment, a court may decide whether the evidence in the record could allow a jury to find that a plaintiff suffered a "serious injury" through the acts of

the defendant.  *Yong Qin Luo v. Mikel*, 625 F.3d 772, 777 (2d Cir. 2010) (per curiam) (citing *Licari v. Elliott*, 441 N.E.2d 1088 (N.Y. 1982).  New York law prescribes a burden-shifting framework when the question of the existence of a serious injury faces a court on summary judgment.  First, the defendant must rely on sworn affidavits from his own physicians and unsworn affidavits from the plaintiff's to make a prima facie case that the plaintiff did not sustain a serious injury.  *Yong Qin Luo*, 625 F.3d at 777.  Second, if the defendant is successful, then the plaintiff must establish her own prima facie case, using sworn affidavits, that her injury is indeed "serious" under the law.  *Id.*

The evidence presented by the plaintiff must be objective, "as subjective complaints of pain will not, standing alone, support a claim for serious injury."  *Id.*  Such objective proof can include "an expert's designation of a numeric percentage of a plaintiff's loss of range of motion" or "an expert's qualitative assessment of a plaintiff's condition," so long as the qualitative assessment is objective and "compares the plaintiff's limitations to the normal function, purpose, and use of the affected body organ, member, function or system."  *Id.* (quoting *Toure v. Avis Rent A Car Sys. Inc.*, 774 N.E.2d 1197, 1200 (N.Y. 2002)).

## III.    DISCUSSION

Bass argues that there are genuine issues of material fact over whether her left shoulder injury falls under the "permanent consequential limitation," "significant limitation," and the 90/180 standards.  Although the defendants successfully establish a prima facie case that Bass did not suffer a permanent-consequential or significant limitation, they fail to establish such a prima facie case under the 90/180 standard.  And, in any event, Bass has brought forward enough facts under all three categories to create a genuine dispute of material fact requiring the denial of summary judgment.

### A.  Permanent-Consequential or Significant Limitation of Use

"[W]hether a limitation of use or function is 'significant' or 'consequential' (i.e., important) relates to medical significance and involves a comparative determination of

the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part." *Toure v. Avis Rent A Car Sys. Inc.*, 774 N.E.2d 1197, 1201 (N.Y. 2002) (internal quotations and alterations removed). A "significant" injury is one that results in "more than a minor limitation of use." *Young Sung Lee v. Garvey*, 718 F. App'x 11, 15 (2d Cir. 2017), *cert. denied*, 139 S. Ct. 209 (2018) (quoting *Licari v. Elliott*, 441 N.E.2d 1088, 1091 (N.Y. 1982)).

The defendants successfully make a prima facie case that Bass suffered no permanent and consequential or significant limitation of the use of her body as a result of the November 2012 accident. In his sworn expert report, Montalbano opined that the left shoulder injury was not caused by the accident and likely did not exist at all — attributing it instead to her obesity or diabetes. In effect, his sworn testimony creates a prima facie case that there was no permanent or significant injury at all caused by the accident.

But Bass creates genuine disputes of material fact in her opposition. Specifically, Bass' doctor, Cohen, objectively documented losses to the range of motion in her left shoulder that never fully went away, despite several years of physical therapy and cortisone shots. *Cf. Yong Qin Luo v. Mikel*, 625 F.3d 772, 777 (2d Cir. 2010) (finding that continued monthly treatment supports a determination of serious injury).[5] Indeed, Cohen opined that this injury would continue to limit her ability to go about her daily life far into the future. Furthermore, Cohen documented muscle spasms and loss of feeling in Bass' arm, and the MRI, though disputed, suggests the possibility of a tear, findings that support a ruling in favor of a serious injury. *Cf. Toure*, 774 N.E.2d at 1202 (holding that MRI tests showing injury and muscle spasms support finding of serious injury under New York law).

---

[5] Defendants argue that "Bass has not received treatment in about three to four years" and therefore the chain of causation between the accident and her current pain is broken. Doc. 50 at 13 (citing *Pommelles v. Perez*, 830 N.E.2d 278, 281 (N.Y. 2005)). But Cohen's testimony on this point creates a dispute of material fact, since he indicates that she was regularly treating with him for a number of years after the accident.

Cohen's diagnosis of Bass' injuries show that they are certainly more than a minor limitation of use given the level of impairment — suggesting that a jury could find them "significant" — and they will continue to affect Bass for the foreseeable future — showing they are "consequential" and "permanent."  Accordingly, the Court denies the motion for summary judgment as to these issues.

### B.  90/180 Standard

The Court also finds Bass "raised a question of fact as to whether she was seriously injured because she could not perform 'substantially all the material acts' consisting of her 'usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment.'" *Yong Qin Luo*, 625 F.3d at 778 (quoting N.Y. Ins. Law § 5102(d)).

The defendants' expert, Montalbano, failed to address the 180-day period after the 2012 accident at all in his expert report, and therefore the defendants have failed to make their prima facie case on this point.  *See Robinson v. Joseph*, 952 N.Y.S.2d 187, 189 (App. Div. 2012) ("Defendants failed to meet their initial burden as to plaintiff's 90/180-day claim, since they relied only on the reports of their medical experts who did not examine plaintiff during the relevant statutory period and did not address plaintiff's condition during the relevant period"); *see also Baytsavayeva v. Shapiro*, 868 F. Supp. 2d 6, 24 (E.D.N.Y. 2012) (finding that defendants failed to meet prima facie burden when physician did not testify to the 180-day period following car accident).

Even if the defendants had met their burden of making a prima facie case, Bass has likely created a genuine issue of material fact with her evidence that the documented shoulder injury prevented her from returning to work in the time immediately following the 2012 accident.  *See Baytsayeva*, 868 F. Supp. 2d at 24 ("A plaintiff's inability to work, whether or not she can perform other "usual activities" is sufficient alone to make out a prima facie 90/180 claim.").  *But see Vega v. Gomez*, No. 11 Civ. 212 (VB), 2012 WL 4069301, at *9 (S.D.N.Y. July 27, 2012) (noting a possible split on this issue between the

federal district courts and a panel of New York's Supreme Court, Appellate Division, First Department). Bass' physician, Cohen, provided Bass with several notes to her employer indicating that she could not return to work due to the accident. In his sworn testimony, Cohen has indicated that the disability preventing her from returning to work stems from the 2012 accident. Defendants have submitted no evidence — medical or otherwise — negating Cohen's testimony.

Given the lack of a prima facie case presented by defendants on this point, and the likely disputes of material fact created by Bass, the Court denies summary judgment on this issue, as well.

## IV.   CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is DENIED. The parties are directed to appear for a status conference on January 8, 2020 at 11:30 a.m. The Clerk of Court is respectfully directed to terminate the motion, Doc. 48.

It is SO ORDERED.

Dated:   December 2, 2019
         New York, New York

                                        _____
                                        Edgardo Ramos, U.S.D.J.